

FILED
2015 Feb-17  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JESSIE J. MILLER, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 7:14-cv-00872-LSC |
| | ) | |
| BOB KING, President of | ) | |
| INTERNATIONAL UNION | ) | |
| UNITED AUTOMOBILE, | ) | |
| AEROSPACE, AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Memorandum of Opinion

Plaintiff Jessie J. Miller ("Miller") brought this action *pro se* in an effort to recover benefits owed under a strike settlement agreement. Miller argues that United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") failed to adequately represent Miller in his efforts to obtain pension benefits pursuant to the agreement.[1] Miller also seeks to recover unidentified additional benefits, as well

---

[1] While Miller named UAW President Bob King as the sole defendant in this action, the complaint makes clear that Miller intended to sue UAW directly. Miller's complaint states that "Defendant failed to represent Plaintiff . . . as promised to *its* members," and that "Defendant settled a lawsuit that resulted in the biggest settlement ever for UAW." Furthermore, individual union officials cannot be held liable for breach of a union's duty of fair representation. *See, e.g.,*

as funds that were "misappropriated" by UAW. Before this Court is UAW's motion for summary judgment. (Doc. 15.) UAW asserts that federal labor law preempts Miller's claim for "unfair representation," and that the claim is barred by the applicable statute of limitations. The issues have been fully briefed and are ripe for review. For the reasons discussed below, UAW's motion for summary judgment is due to be granted.

## I.   Background

In November 1979, Miller was hired as a maintenance and production worker at the Elastic Stop Nut Division ("ESND") plant in Union, New Jersey. The plant was operated by Amerace Corporation ("Amerace") and manufactured specialized metal fastening devices.

While employed at the ENSD plant, Miller was a member of UAW Local 726, the exclusive bargaining agent for all workers at the ESND plant. In 1985, Harvard Industries ("Harvard") purchased the ESND plant from Amerace and attempted to operate the plant on a non-union basis. This prompted UAW workers, including Miller, to go on strike on April 14, 1985. UAW proceeded to file a complaint with the National Labor Relations Board, arguing that Harvard violated the National Labor

*Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) (stating that individual union officers are "immune from unfair representation claims").

Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, when it refused to negotiate with UAW representatives.[2] In March 1991, UAW and Harvard reached a settlement agreement that ended both the six-year-long strike at the ESND plant and the related litigation. The settlement agreement required Harvard to provide enhanced pension benefits to certain ESND workers.

In 1988, Miller became disabled due to a back condition and began receiving social security benefits. Miller therefore did not return to work at the ESND plant once the strike ended in 1991. In December 1992 and January 1993, Miller received letters from Harvard informing him of the new pension benefits available to ESND plant employees as a result of the settlement. Miller called Harvard upon receipt of one of these letters and had a telephone conversation with a Harvard representative who informed Miller that he would potentially be eligible for benefits once he reached age 55.

In 2002, Harvard declared bankruptcy, and the ESND pension plan was taken over by the Pension Benefit Guaranty Corporation ("PBGC").[3] In 2009, Miller turned 55 years old and sought his pension. He contacted former UAW officials, who

---

[2] For a more detailed history of the strike and ensuing litigation, see *Elastic Stop Nut Div. of Harvard Indus., Inc. v. NLRB*, 921 F.2d 1275 (D.C. Cir. 1990).

[3] PBGC is a federal corporation created under the Employee Retirement Income Security Act of 1974. PBGC commonly acts as a guarantor for underfunded pension plans.

informed Miller that he should apply with PBGC for a pension. However, PBGC told Miller that he was not included on the list of individuals entitled to a pension. Miller contacted the UAW research department in June 2012, and was provided a copy of the settlement agreement between Harvard and UAW. Miller filed this action in state court in on April 4, 2014. The action was removed to this Court on May 9, 2014. UAW argues that removal jurisdiction is proper because Miller's claims are preempted by § 9(a) of the NLRA and § 301(a) of the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. § 159(a); 29 U.S.C. § 185(a).

Since filing this action, Miller has started receiving pension benefits, as he states in his response to UAW's motion for summary judgment that "[s]tarting the pension has been resolved due to documents submitted by the Plaintiff." *See* Doc. 18, at 3. However, Miller still argues that he is entitled to unspecified additional benefits under the settlement agreement. According to Miller, an employee in the UAW research department told him of a "well-protected employee handbook" distributed to all members of the Local 726 once the strike ended. This handbook supposedly lists additional benefits resulting from the settlement agreement. The handbook is not before this Court. UAW has continuously stated that it is not in possession of the handbook and, to UAW's knowledge, the handbook does not exist. Finally, Miller

argues that UAW has "misappropriated" settlement funds. Miller does not identify specific funds, nor does he state how these funds were misappropriated.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249, 106 S. Ct. at 2511.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). However, "unsubstantiated assertions alone are not

enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

## III.   DISCUSSION

### A.   Sources of Preemption

Miller alleges that UAW failed to adequately represent him in efforts to obtain benefits owed under a settlement plan. UAW cites two potential sources of preemption for this claim: (1) the federal duty of fair representation, implied under sections 8(b) and  9(a) of the NLRA; and (2) section 301(a) of the LMRA, which confers federal jurisdiction over the interpretation and enforcement of collective bargaining agreements. *See* 29 U.S.C. § 158(b)–159(a); 29 U.S.C. § 185(a). Section 9(a) of the NLRA grants unions the exclusive authority to bargain on behalf

of all employees in a unit. *See* 29 U.S.C. § 159(a) (stating that "[r]epresentatives designated or selected for the purposes of collective bargaining by a majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees . . . for the purposes of collective bargaining"). Because unions are the exclusive representatives of the employees in a unit, the NLRA imposes a "statutory obligation to serve the interests of all members without hostility or discrimination to any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also id*. at 182 (explaining that federal law imposes a duty of fair representation on unions in an effort to "prevent arbitrary union conduct against individuals stripped of traditional forms of redress" due to the fact those individuals are unable to bargain separately from the union).

Because federal law so thoroughly defines a union's rights and duties when representing its members, any state law attempting to regulate union conduct within the concern of the federal duty of fair representation is considered preempted. *See id*. at 177 (stating that a claim against a union for unfair representation was based on a violation "of a duty grounded in federal statutes [i.e., the NLRA] and . . . federal law therefore governs the cause of action"); *see also Condon v. Local 2994, United*

*Steelworkers of Am., AFL-CIO, CLC*, 683 F.2d 590, 594–95 (1st Cir. 1982) (stating that the rights and duties of a union when representing its members is an area of law "'so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law' .... Congress has occupied the field and closed it to regulation'" (quoting *Teamsters v. Morton*, 377 U.S. 252, 261 (1964))).[4]

UAW also argues that Miller's claim implicates § 301 of the LMRA. Specifically, UAW argues that § 301 has preemptive effect because Miller seeks enforcement of a "contract" within the meaning of § 301. Section 301(a) of the LMRA states that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or with regard to the citizenship of the parties."

29 U.S.C. § 185(a). The Supreme Court has stated that § 301 preempts both (1) claims alleging a direct violation of a duty imposed as a result of a "contract" under § 301; and (2) claims that do not allege a breach of contract, but still require a court to interpret the meaning of a specific provision in a collective bargaining agreement. *See*

---

[4] This is not to suggest that there are no circumstances in which an employee may bring a state law claim against a union for refusing to adequately protect the employee's interests. For example, a union may be accused of violating duties that are derived solely from state law and touch only peripherally on the concerns of the NLRA. *See generally Farmer v. United Bhd. of Carpenters and Joiners of Am.*, *Local 25*, 430 U.S. 290 (1977).

*United Steelworkers of Am., ALF-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) (stating that "state-law cause[s] of action for violation of collective bargaining agreements [are] entirely displaced by federal law under § 301" (citing *Avco Corp. v. Machinists*, 390 U.S. 557 (1968))); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (stating that § 301 preempts a plaintiff's state-law claims whenever "resolution of [the] state-law claim is substantially dependent upon analysis of the terms of an agreement made [between employer and union] in a labor contract").

## B.    The Nature of Miller's Claim

Miller alleges in his complaint that UAW "failed to represent Plaintiff [in his efforts to obtain benefits under the settlement agreement], assuring fair and just treatment as promised to it[s] members in the UAW Constitution." UAW urges the Court to characterize Miller's allegation as a "hybrid" § 301/duty of fair representation ("DFR") claim, arguing that Miller's claim alleges a breach of the NLRA-imposed duty of fair representation *and* seeks enforcement of a collective bargaining agreement (i.e., the strike settlement) under § 301 of the LMRA. A § 301/DFR claim combines what was formerly two separate causes of action: breach of a collective bargaining agreement under § 301 of the LMRA and breach of the duty of fair representation under the NLRA. *See Reed v. United Transp. Union*, 488 U.S.

319, 328 (1989) (citing *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). The hybrid cause of action was developed to provide employees a method to vindicate their rights pursuant to a union-brokered contract should the union fail to fairly represent them during the collectively bargained-for grievance process. *See Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 885 (11th Cir. 1985). Consequently, most hybrid claims involve a plaintiff-employee suing both his employer and his union—the employer is sued for breach of a § 301 "contract," while the union is sued for breach of the duty of fair representation during the grievance process. *See id*. at 886–87. Regardless of whether the plaintiff sues both employer and union or chooses to sue only one party, he must prove that the employer breached a "contract" under § 301 of the LMRA *and* that the union breached its duty of fair representation in handling the grievance process. *See id*. at 886 (stating that a plaintiff must "show both that the employer has breached the collective bargaining agreement and that the union has breached its duty of fair representation in handling the ensuing grievance proceeding" (citing *Vaca*, 386 U.S. at 185–86)).

This Court agrees with UAW's characterization of Miller's "unfair representation" claim as a hybrid § 301/DFR claim. First, Miller invokes the NLRA-imposed duty of fair representation when asserting that UAW failed to provide him

"fair and just treatment" in his efforts to obtain benefits from PBGC. While Miller apparently considers the union constitution as the source of UAW's obligation to provide "fair and just" representation to Miller, courts have routinely refused to recognize a separate action based on language found in a union's constitution whenever doing so would merely "repackage" the NLRA-imposed duty of fair representation. *See Erkins v. United Steelworkers of Am., AFL-CIO-CLC*, 723 F.2d 837, 840 (11th Cir. 1984) (refusing to recognize a claim based on a duty of fair representation implied from a union constitution, and stating that "the six-month limitations period in § 10(b) [of the NLRA] would be rendered meaningless [if] fair representation claims could be brought under state statute of limitations for contract suits"); *see also Brenner v. Local 514, Lewis v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen, and Helpers of Am., Local Union No. 771*, 826 F.2d 1310, 1315 (3d Cir. 1987) (refusing to accept the appellant's argument that his action for unfair representation sounded in the union constitution when it implicated the same interests as the NLRA's duty of fair representation).

Furthermore, Miller's claim inevitably requires interpretation of a "contract" within the meaning of § 301, since Miller's claim of unfair representation is directly tied to his employer's alleged breach of the strike settlement agreement. *See Retail*

*Clerks Ass'n Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 541, 548 (1962) (stating that "[w]e need not decide whether or not this strike settlement is 'collective bargaining agreement' to hold, as we do, that it is a 'contract' for purposes of § 301").

In making the determination that Miller's "unfair representation" claim constitutes a hybrid § 301/DFR claim, the Court notes that some of the characteristics typical of a hybrid action are not present in this case. For example, Miller has not sued his employer and was not forced to submit his claim for benefits to a collectively bargained-for grievance process. Still, no matter how Miller's claim is characterized—whether as a straight-forward DFR claim or as a hybrid § 301/DFR claim—it sounds in federal labor law and is therefore due to be preempted.

## C.    Applying § 10(b)'s Six-Month Limitations Period

Miller's "unfair representation" claim is based at least in part on the NLRA's duty of fair representation; therefore the claim is due to be preempted and the six-month limitations period found in § 10(b) of the NLRA is to be applied.[5] *See* 29 U.S.C.

---

[5] While the Court characterizes Miller's claim as a hybrid § 301/DFR claim, the Court need only find that the NLRA's duty of fair representation is implicated in order to decide this case, since characterizing Miller's claim as either a hybrid § 301/DFR claim or a straight-forward DFR claim triggers preemption and subjects Miller's claim to the NLRA's six-month limitations period. *See Del Costello*, 462 U.S. at 151 (adopting for hybrid claims the six-month limitations period found in § 10(b) of the NLRA).

§ 160(b) (enacting a six-month limitations period for claims alleging unfair labor practices under the NLRA, including claims for breach of the duty of fair representation). The six-month limitations period found in § 10(b) of the NLRA begins to run when the plaintiff, through the exercise of reasonable diligence, "was or should have been aware of the acts constituting the alleged violation." *See Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1558 (11th Cir. 1986); *see also Benson v. Gen. Motors Corp.*, 716 F.2d 862, 864 (11th Cir. 1983) (stating that the § 10(b) limitations period begins to run "when plaintiffs either were or should have been aware of the injury itself, not . . . when plaintiffs became aware of one of the injury's many manifestations" (citing *NLRB v. Auto Warehousers, Inc.*, 571 F.2d 860, 864–65 (5th Cir. 1978))). For hybrid § 301/DFR claims, the six-month limitations period begins following either the alleged breach of the union-brokered contract or the violation of the duty of fair representation, whichever occurs later. *See Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1205 (11th Cir. 2002).

Here, the undisputed facts show that, by no later than June 2012, Miller knew of the acts serving as the basis of his claim. In 2009, Miller first discovered that he was being denied benefits under the settlement agreement. Miller stated in his deposition that, upon learning this information, he felt that UAW failed to represent him

properly. *See* Doc. 17, at 17 ("That's when I realized [UAW] had failed to represent me, and not only that, [UAW has] failed me in every way."). In June 2012, Miller requested and received a copy of the settlement agreement from UAW's research department. According to Miller, an individual in UAW's research department informed Miller at that time that, per a directive from UAW's legal team, no one in the research department was to communicate with Miller any further, and were instead to refer him to PBGC. *See id*. Even viewing the evidence in the light most favorable to Miller, he should have been aware by June 2012 that the settlement agreement had been breached and that UAW would assist him no further in his efforts to enforce it. This would cause the NLRA's six-month limitations period to run by December 2012. Yet Miller waited until April 9, 2014 to file this action—almost fourteen months after the NLRA's statute of limitations had acted to bar his claim.

Miller asserts that the Court should toll § 10(b)'s limitations period because he became entangled in UAW's "dead end process." Miller cites unreturned phone calls, unanswered letters, and overtures of settlement that never materialized. Miller offers no evidence in support of these allegations. However, even if he did offer such evidence, it would be insufficient to delay the start of the statute of limitations. *See Vadino v. A. Valey Engineers*, 903 F.2d 253, 262–63 (3d Cir. 1990) (refusing to toll

§ 10(b)'s limitations period based on defendant's pre-suit settlement overtures when plaintiff presented no evidence that he relied on employer's statements).

### D. Miller Fails to Offer Evidence Creating a Genuine Issue of Material Fact

#### 1. Miller's "Unfair Representation" Claim

Furthermore, even if the six-month limitations period found in § 10(b) of the NLRA did not bar Miller's unfair representation claim, Miller has failed to create a genuine dispute of material fact concerning UAW's breach of the duty of fair representation. Put simply, Miller fails to offer any evidence suggesting that UAW acted arbitrarily or in bad faith. It is undisputed that UAW was not in charge of distributing settlement funds, and that UAW never impeded Miller from pursuing relief directly from PBGC. In fact, both UAW and Miller agree that, in 2009, UAW officials told Miller that UAW had no access to the settlement funds, and that Miller's sole recourse concerning settlement benefits was with PBGC. *See* Doc. 17, at 26–27. Furthermore, nothing has ever prevented Miller from suing PBGC or Harvard directly. Thus, this case differs significantly from most § 301/DFR cases, in which the plaintiff is forced to rely on the union as his exclusive agent in efforts to enforce collective bargaining agreements.

In addition, a requirement of a hybrid § 301/DFR claim is that the plaintiff

show the breach of a "contract" within the scope of § 301. Miller is now receiving pension benefits, and apparently has abandoned that claim as a result. *See* Doc. 18, at 3 ("Starting the pension has been resolved due to documents submitted by the Plaintiff."). While Miller still seeks additional benefits under the settlement agreement, he has not identified these benefits, much less offered any evidence showing that he is entitled to receive them. Instead, Miller asserts that there was an employee handbook distributed to ESND workers at the end of the strike, and that this handbook details additional benefits. Miller argues that UAW has failed to produce this handbook despite repeated requests, and now asks that the Court require UAW to produce it. However, UAW has represented to this Court multiple times that it is not in possession of this employee handbook and, to UAW's knowledge, such a handbook does not exist. Furthermore, UAW has submitted the entire UAW-Harvard strike settlement agreement as evidence, and the document does not mention any benefits beyond the pension that Miller is already receiving. *See* Doc. 17, at 28.

Miller has failed to provide evidence suggesting that he is entitled to additional benefits, and thus has failed to create a genuine issue of material fact as to one of the requirements of his claim. Put simply, UAW cannot be found to have breached its duty of fair representation for failing to advocate for the award of benefits that do not

exist.

### 2.   *Miller's Claim for "Misappropriated" Funds*

Summary judgment is also due to be granted against Miller's claim seeking the return of "misappropriated" settlement funds. Miller never identifies in his complaint or his response what conduct serves as the basis for this claim. He offers no evidence that UAW spent funds in an improper way, and has failed to dispute UAW's factual assertion that UAW does not have access to any of the funds resulting from the settlement. *See* Doc. 16, at 12.; *see also* Fed. R. Civ. P. 56(e) (stating that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed" for the purposes of summary judgment). Reviewing Miler's deposition, it seems that this claim stems solely from Miller's dissatisfaction with the amount of attorneys' fees that UAW lawyers received following resolution of the NLRB litigation in 1991. However, Miller offers no evidence that the attorneys' fees were calculated incorrectly or were otherwise awarded inappropriately.

## IV.   CONCLUSION

For the reasons stated above, UAW's motion for summary judgment (Doc. 15) is due to be GRANTED.

A separate Order will be entered.

Done this 17 day of February 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822